STATE OF WEST VIRGINIA *v.* CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF WEST VIRGINIA

(CC 609)

Submitted May 9, 1939. Decided June 20, 1939.

*Clarence W. Meadows,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for the State.

*J. M. Woods, Price, Smith & Spilman, Clarence E. Martin* and *Martin, Seibert & Beall,* for defendant.

KENNA, JUDGE:

At the December Term, 1938, the grand jury of Berkeley County returned an indictment against "The Chesapeake and Potomac Telephone Company of West Virginia, a Corp.", charging that, while engaged in the telephone, etc., business, on the 22nd day of November, 1938, it "did unlawfully transmit, furnish, and permit to be transmitted and furnished over and upon and by means of wires, lines, apparatus and appliances of the said The Chesapeake and Potomac Telephone Company of West Virginia, a Corp., messages, tokens and information of and concerning the result of a horse race, to a pool room, then and there being in said county and state, the said pool room being a room where pool tickets, chances, vouchers and certificates entitling and purporting to entitle the holder and promisee thereof to money and other thing of value, contingent upon the result of a horse

race, were then and there made out and issued to divers persons, for a money consideration bet and wagered by them, * * *." A demurrer to the indictment was interposed, which was overruled by the circuit court, which thereupon certified to this Court the following questions of law which arose in considering the sufficiency of the indictment:

"1. Is section 10, Article 10, Chapter 61 of the Code of West Virginia, under which this indictment was drawn, constitutional?

"2. Does the indictment fail to comply with Article 3, Section 14, of the Constitution of West Virginia, respecting the requirement to fully and plainly inform the defendant of the character and cause of the charge against it?

"3. Is the indictment demurrable because it charges in one count that the defendant unlawfully transmitted and furnished over and upon and by means of its wires, lines, apparatus, messages, tokens and information of and concerning the result of a horse race to a pool room and also that the defendant permitted to be transmitted and furnished over and upon and by means of its wires, lines, apparatus and appliances, messages, tokens and information of and concerning the result of a horse race to a pool room?

"4. Is the indictment demurrable because of the fact that it does not allege that the offense charged was 'knowingly' committed?      .

"5. Is the indictment demurrable because it fails to allege that there was a horse race, where it was and when, the results of which were transmitted or permitted to be transmitted by the defendant to a pool room?"

The first question certified, we think, is sufficiently answered by the case of *Meadows* v. *City of Logan,* 121 W. Va. 51, 1 S. E. (2d) 394, which holds that an insufficient title to an act of the legislature is cured by the codification by the legislature of the statute law of the state. The statute in question was enacted February 22, 1911. The

codification was adopted April 3, 1930. The enactment of a general codification embraces all of the then existing general statutory law, including that which might be defective because of its mode of enactment.

It is contended by defendant's attorney that Code, 24-1-1, and Code, 24-3-1, 2, require the defendant as a public utility to render service without discrimination to all who apply and are inconsistent with the statute under which defendant was indicted, citing the case of *Elk Hotel Co.* v. *United Fuel Gas Co.*, 75 W. Va. 200, 83 S. E. 922, L. R. A. 1917 E, 970. We do not believe that this reasoning is applicable because of the fact that the legislative enactment prohibiting a utility from carrying messages such as the statute mentions to so-called pool rooms is based upon a sound public policy to discourage gambling and the attendant vices, and obeying the legislative inhibition could not be classed as a discrimination.

The second question relates to the constitutional requirement that the accused should be fully and plainly informed of the character and cause of the charge against him. The indictment before us follows the language of the statute, and we see no reason for excepting this indictment from the operation of the general rule to the effect that this is sufficient. There can be no doubt that the defendant was amply informed of the nature of the charge against it, the time that the alleged offense was committed, and the locality in which it occurred. Recognizing the bulk and detail of a public utility's business, we still are of the opinion that an indictment against a person engaged in that business is not required to be more specific than an indictment against an individual. Of course, the statutory provision requiring a bill of particulars (Code, 56-4-19) upon the defendant's request would have to be complied with, and the discretion of the trial court might well require more detailed information and less haste in the submission of a case against a large company than against an individual.

The third query, we believe, is sufficiently answered by the fact that the defendant is entitled to a bill of particu-

lars. We see no reason why the same counts in an indictment should not include the unlawful performance of the designated act and also the unlawful permission of the same act when both are proscribed by the statute. The state might be required to elect which character of the statutory offense charged in the indictment it would present, or to strike out what would otherwise be treated as surplusage. *State* v. *Miller,* 89 W. Va. 84, 108 S. E. 487; *State* v. *Jarrell,* 76 W. Va. 263, 85 S. E. 525; *State* v. *Calhoun,* 67 W. Va. 666, 69 S. E. 1098.

The fourth query as to whether the indictment is demurrable because it does not allege that the offense was "knowingly" committed, we think, should be considered in the light of the fact that this offense is *malum prohibitum,* not *malum in se.* The statute in question does not require that the act prohibited should be knowingly done. We do not see why this question is to be distinguished from the question which was raised in the cases involving the sale of intoxicating liquor to minors. The statute under consideration in those cases did not require knowledge, and this Court held that for that reason the indictments need not allege that the offense was knowingly committed. *State* v. *Smith,* 61 W. Va. 329, 56 S. E. 528; *State* v. *Furr,* 101 W. Va. 178, 132 S. E. 504.

The statute in question was enacted for the purpose of preventing common gambling, which is an offense at common law. If carried on to the extent of operating a pool room, this statute declares it to be an offense against public policy to furnish such a place information of a nature which contributes materially to the operation of its gambling devices. The lack of knowledge, it is to be assumed, would be considered by the trial court in mitigation of punishment, but public policy, we believe, would not permit the lack of diligence or the absence of attentiveness to constitute a substantial defense, and for that reason, the absence of an allegation of knowledge, we think, is no ground for sustaining a demurrer to the indictment.

The fifth point is based upon the failure of the indict-

ment to allege and describe the fact that there was a horse race. We do not regard this as a serious question. It is quite clear, we think, that such a requirement would necessitate the use of descriptive matter which would be very difficult to procure, and which is totally non-essential as a material allegation. We, of course, are not at this time going further than to pass upon the essential averments of the indictment; we are not passing upon the issues of fact which might or might not become material as the hearing of the charges proceed. The non-occurrence of a horse race at a certain locality at a certain time might develop to be a material issue of fact, but to require the state to designate in an indictment which one of a number of horse races occurring on the same day, at the same place, as to the result of which the defendant transmitted, or caused to be transmitted, information, would, to our minds, merely be an unnecessary complication of doubtful benefit.

The order of the Circuit Court of Berkeley County overruling the demurrer to the indictment is therefore affirmed.

*Affirmed.*

Fox, PRESIDENT, dissenting:

I agree with the majority opinion except as to that part which holds that it is not necessary that the indictment charge that the alleged offense was "knowingly" committed, and that lack of knowledge can only be considered in mitigation of punishment.

Ordinarily, an indictment is sufficient if it charges the offense in the language of the statute. This is especially true as to offenses *malum prohibitum.* However, as to cases of this character, I have understood that all of the elements necessary to constitute the offense charged must be alleged. *State* v. *Lynch,* 84 W. Va. 437, 100 S. E. 284. I do not think there is any fixed rule which can be followed in all cases.

The defendant, being a public utility, must serve those

who apply for its facilities, without discrimination. Of course, it cannot defend in this case on that ground alone, for the statutes and regulations which require the furnishing of service, without discrimination, must be read in connection with other statutes which prohibit it from aiding in violation of law. Being under this requirement of service, I cannot believe it was intended to make its compliance therewith a crime, unless done with knowledge that an unlawful act was thereby aided. The state in its brief, and on oral argument, seems to recognize the importance of knowledge, when it concedes that a showing of lack of knowledge would be a defense to the charge and thus, in effect, admits that knowledge is a necessary element of the offense alleged. If this be true, it seems to me that it necessarily follows that knowledge should have been alleged in the indictment.

The majority opinion does not follow the concession of the state, and would consider lack of knowledge only in mitigation of punishment; but in my opinion, the failure to show knowledge on the part of the state, or a showing of lack of knowledge on the part of the defendant, that it was furnishing its services to a pool room would entitle it to a verdict of acquittal. To require the defendant to furnish its services to all parties who apply therefor, without discrimination, and, at the same time, impose upon it the risk that someone to whom those services are furnished may, without its knowledge, use them to violate another statute, seems to me to place too much of a burden upon persons engaged in the particular character of business in which the defendant is engaged. The nature of such business, in my judgment, calls for a different rule than that applied to cases cited in the majority opinion, which involve charges of sales of intoxicating liquors to minors.

I would reverse the judgment of the circuit court and sustain the demurrer to the indictment.

Judge Hatcher joins in this dissent.

RILEY, JUDGE, concurring:

I concur in the majority opinion. It occurs to me, however, that lack of knowledge and reasonable grounds of knowledge that defendant's wires were being used in violation of the statute is a good defense. True, such statement, if contained in the majority opinion, would be dictum. Here, the use of dictum would seen to be salutary and highly informative to counsel on the trial of this case.